# Illinois Official Reports

## Appellate Court

---

### *Jones v. Live Nation Entertainment, Inc.*, 2016 IL App (1st) 152923

---

| | |
|---|---|
| Appellate Court Caption | SHARON E. JONES, Plaintiff-Appellant, v. LIVE NATION ENTERTAINMENT, INC., and UNITED CENTER JOINT VENTURE, Defendants (Live Nation Entertainment, Inc., Defendant-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-2923 |
| Filed | August 26, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-M1-303116; the Hon. Larry G. Axelrood, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | William A. Jaeger, of William A. Jaeger, P.C., and Harry C. Lee, of Law Office of Harry C. Lee, both of Chicago, for appellant.<br><br>Martin A. Kanofsky and Thomas D. Donofrio, both of Merlo Kanofsky Gregg & Machalinski Ltd., of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Lampkin and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1   This appeal arises out of a negligence action in which plaintiff, a concert attendee, brought suit against defendant Live Nation Entertainment, Inc. (Live Nation), the promoter, for injuries she sustained at one of its concerts. On a prior interlocutory appeal, this court ordered defendant Live Nation to answer plaintiff's written interrogatories concerning the foreseeability that injuries could occur as a result of the actions of its performers. While the interlocutory appeal was pending, the trial court granted summary judgment to defendant Live Nation. Although we subsequently ordered additional discovery, the trial court denied plaintiff's motion for reconsideration and the ordered discovery never occurred.

¶ 2   On this appeal, plaintiff argues (1) that the trial court erred in granting summary judgment to defendant on grounds that it owed no duty to her because defendant Live Nation, as lessee of the United Center for the Kanye West/Jay Z concert, "possessed" the area where plaintiff was injured and (2) that the trial court abused its discretion by denying plaintiff's motion for reconsideration because the trial court erred in finding that defendant did not possess the area and because the trial court did not allow this court's discovery order to come to fruition.

¶ 3   For the following reasons, we find that the trial court abused its discretion by denying plaintiff's motion for reconsideration, and we reverse.

¶ 4                              BACKGROUND

¶ 5   Plaintiff Sharon Jones filed her initial negligence complaint on November 20, 2013, alleging that she sustained injuries after falling into a "crowd surge" at the United Center in Chicago toward the end of a "Watch the Throne" concert promoted by defendant Live Nation. The "crowd surge," which is a mass of people attempting to "rush the stage," resulted after the performers encouraged the crowd to leave their assigned seats and "come on down" to party. Plaintiff alleges that a man bumped into her, knocking her down a flight of stone steps, causing injuries to her legs, back, neck, and head. Defendant Live Nation promoted the concert, and defendant United Center Joint Venture (United Center JV) owned the venue where the concert occurred.

¶ 6   On February 25, 2014, plaintiff filed an amended complaint that alleged that the performers in the "Watch the Throne" show "encouraged the crowd to leave their assigned seats and move down the aisles toward the stage without any direction, assistance or guidance from the designated ushers" and that "upon the conclusion of the show [plaintiff] proceeded to make her way from her seat *** intending to exit the United Center" but was caught in the resulting "human tsunami" and was "knocked from her feet to the stairs" causing her injuries. The amended complaint alleges two counts of negligence, one against defendant Live Nation and one against defendant United Center JV. The count against defendant Live Nation alleges that defendant "acted in a reckless and careless manner without regard for the safety of their audience when they knew or should have known that any movement by a majority of their audience at the same time in the same direction would create a hazard" and that plaintiff sustained her injuries as a direct and proximate result of defendant's negligence.

¶ 7   On April 7, 2014, plaintiff served written interrogatories on defendant Live Nation including interrogatory No. 4, which asked:

"Has this Defendant been named as a party to any other lawsuits allegedly arising from events which occurred during other performances by this Defendant within the last five years, and since the date of this occurrence? Please provide the caption, case number, county and state of filing, and the current status of each matter."

Interrogatory No. 5 asked:

"Has this Defendant received notice of any claims of alleged injury named arising from events which occurred during other performances within the last five years, and since the date of this occurrence? Please provide the name of the person making the claim, his or her attorney's name and address, and the status of said claim."

¶ 8 On May 9, 2014, defendant Live Nation responded, objecting to interrogatory No. 5 on the ground that it was "vague, overbroad in time and scope, and [sought] information that is neither relevant to the subject matter involved in the pending action nor reasonably calculated to lead to the discovery of admissible evidence." Defendant Live Nation objected to interrogatory No. 4 on the same ground, additionally stating that "lawsuits against Live Nation are a matter of public record."

¶ 9 On June 27, 2014, plaintiff filed a motion to compel responses to written discovery, asking the trial court to compel defendant Live Nation to respond to interrogatory Nos. 2, 4, 5, 6, 7, 8, 11, 12, and 13.

¶ 10 On July 8, 2014, plaintiff's motion was granted in part by Judge James Snyder.[1] The record contains neither a transcript nor a bystander's report of the July 8 hearing. The written order, dated July 8, 2014, compelled defendant Live Nation to answer interrogatory Nos. 2, 4, 5, 11, and 13. However, interrogatory Nos. 4 and 5 were both modified to limit their scope. Interrogatory No. 4 was modified to state:

"Live Nation shall identify all performance based lawsuits filed against Live Nation in the United States in the 5 years prior to the occurrence and since."

This modification limited the scope of interrogatory No. 4 to only the United States. Interrogatory No. 5 was modified to state:

"Live Nation shall identify all claims for injuries made against it based in its performances in the United States in the 2 years prior to the event and since."

This modification limited the interrogatory to the United States and also reduced the applicable time span from five years "prior to the event and since" to only two years "prior to the event and since."

¶ 11 Following these modifications, defendant Live Nation filed a motion on July 23, 2014, asking the trial court to reconsider its July 8 order. Attached to the motion was the affidavit of Jan Berger, defendant's vice president of risk management, in which he averred that "there are approximately 500 claims pending against defendant in jurisdictions around the United States," that "[i]n 2013 alone, Live Nation opened 227 claims/lawsuits," that "claims are not categorized by specific claim type" and that complying with the order would cause defendant Live Nation to "suffer a massive burden involving time, effort, and expense, as well as a disruption of business operations." The motion additionally argued that "sweeping discovery requests are considered an abuse of discretion."

---

[1]We provide the trial judge's name here only because defendant's motion for reconsideration was later heard by a different judge.

¶ 12       On August 4, 2014, defendant's motion for reconsideration was heard before Judge Jerry Esrig, a different judge than the judge who had entered the July 8 discovery order. The appellate record contains the transcript of that hearing, which shows that defendant argued (1) that plaintiff failed to establish that the answer to the interrogatories would be relevant to the case and (2) that compliance would create an undue burden as shown by Berger's affidavit. Since the trial judge was not at the prior hearing, he inquired if, during the July 8 hearing, defendant Live Nation had been aware of the number of claims that would be involved in answering the interrogatory. Defendant Live Nation responded that, during the July 8 hearing, it did not have that information, and instead it had objected on "relevance and other grounds." The trial court then inquired if, during the July 8 hearing, defendant Live Nation agreed to the content of the order. Defendant responded that it had only "agreed to the language in the order after the judge ruled." However, plaintiff responded that the language of the July 8 order was a result of the two parties, at the judge's direction, going into the hall to "work this out." The trial court then denied defendant's motion for reconsideration, and defendant's attorney asked the trial court to hold her in friendly contempt. After a discussion among both attorneys and the judge as to how to structure an order of friendly contempt, the trial court ordered that "[t]he law firm Merlo Kanofsky Gregg & Machalinski, Ltd. [(Merlo),] is hereby held in contempt for failure to comply with the July 8, 2014 order and fined $1.00 per day until compliance."

¶ 13       On August 6, 2014, Merlo filed a notice of appeal, which stated in full:

"Defendant/Appellant, LIVE NATION ENTERTAINMENT, INC., hereby appeals to the Appellate Court of Illinois, First District, pursuant to Illinois Supreme Court Rule 304(b)(5), the order entered August 4, 2014 holding Merlo Kanofsky Gregg & Machalinsky Ltd. in contempt and fining it $1 per day, and the order entered July 8, 2014, compelling Live Nation Entertainment, Inc. to answer plaintiff's interrogatory nos. 4 and 5. Copies of the August 4, 2014 order and the July 8, 2014 order are attached hereto.

Defendant-Appellant prays that the orders appealed from be reversed or such other relief as Defendant-Appellant is entitled to by law."

¶ 14       On the subsequent interlocutory appeal, defendant Live Nation argued (1) that the circuit court erred in compelling it, in the July 8 order, to answer plaintiff's interrogatory Nos. 4 and 5, (2) that the circuit court erred in the August 4 order by denying its motion to reconsider, and (3) that the circuit court erred in the August 4 order by holding its law firm in contempt for failure to comply with the July 8 discovery order. *Jones v. Live Nation Entertainment, Inc.*, 2015 IL App (1st) 142429-U, ¶ 15. Specifically, defendant Live Nation challenged the discovery order on the ground that the ordered discovery was not relevant and would create an undue hardship, as measured by time, effort, and expense. *Jones*, 2015 IL App (1st) 142429-U, ¶ 23.

¶ 15       On December 2, 2014, while the interlocutory appeal was pending before this court, defendant Live Nation filed a motion for summary judgment (735 ILCS 5/2-1005 (West 2014)) in the circuit court before Judge Esrig, seeking to dismiss plaintiff's negligence claim against it. Defendant Live Nation argued (1) that plaintiff's injury was caused by an independent act of a third party and there was no evidence that the fall was caused by a crowd surge as alleged in plaintiff's complaint and (2) that defendant owed no duty to the plaintiff (a) because it was not the principal or employer of the artists performing at the "Watch the Throne" concert and (b) because no special relationship existed between defendant and

plaintiff that would cause defendant to owe plaintiff a duty to act to prevent the type of accident that occurred.

¶ 16 On February 20, 2015, plaintiff filed a response to defendant Live Nation's motion for summary judgment. She argued that defendant Live Nation was the possessor of the premises and that she was an invitee and that, as such, defendant owed her a duty of care to "take reasonable precautions to protect [her] from the unreasonable risk of harm" resulting from "the conduct of [its] agents or the conduct of third parties." In support, plaintiff set forth the factors that an Illinois court must consider in determining whether a duty of care exists, including the "foreseeability" and "likelihood" of the injury.[2] Plaintiff argued that it was not the independent act of a third party that caused her injuries, but rather the crowd surge upon the darkened stairs and aisles, directly resulting from the performers' "unsafe" invitation for concert attendees to "leave their seats" in a disorderly manner and "throng to the main floor." Plaintiff alleges that defendant knew or should have known that this would occur yet failed to take proper precautions.

¶ 17 On May 21, 2015, a third trial court judge, Judge Larry Axelrood, granted defendant's motion for summary judgment on the basis that defendant owed no duty to plaintiff. The trial court found that there was "a question of fact for the jury as to whether the independent act of the man who ran into Plaintiff was the sole proximate cause of her injury." However, the trial court then held: "there [was] no evidence in the record that Defendant had any control over the artists or how they performed and the performers were not employees of Defendant. Therefore, Plaintiff cannot establish that Defendant owed and breached a duty under the theory of *respondeat superior*." Finally, the trial court stated that, under premises liability, plaintiff failed to establish that defendant Live Nation was the possessor of the venue, as defendant Live Nation did not control the area where plaintiff's injury occurred under its contract with defendant United Center JV. Thus, the trial court found that defendant Live Nation did not owe plaintiff a duty of care under either a theory of premises liability or *respondeat superior*. In conclusion, the trial court found: "After reviewing the pleadings and attachments, the Court finds that Plaintiff cannot establish any duty or breach of duty on the part of the Defendant [Live Nation]."

¶ 18 On June 22, 2015, plaintiff moved for reconsideration of the trial court's May 21, 2015, order granting defendant's motion for summary judgment, alleging an error in the trial court's application of the law with respect to duty. Plaintiff argued that defendant Live Nation owed her a duty because (1) the rental agreement established that defendant Live Nation had control over the venue and (2) defendant knew or should have known that the acts of the performers were likely to create conditions that endangered the audience. Specifically, plaintiff argued that "it is the foreseeable result of [the] invitation [to attendees to come down to the main floor] which creates the duty." Third, plaintiff argued that defendant Live Nation's refusal to answer certain discovery requests demonstrated that it knew or should have known of the dangerous

---

[2]The four factors relevant in determining whether a duty exists include "(1) the reasonable foreseeability of the injury, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436-37 (2006) (citing *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 391 (2004), *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140-41 (1990), and *Lance v. Senior*, 36 Ill. 2d 516, 518 (1967)).

conditions created by the artists that it promoted and placed in performance. Plaintiff implored the trial court to withhold entry of the order granting summary judgment until the appellate court rendered its decision on the interrogatories.

¶ 19 On July 14, 2015, defendant Live Nation filed a response to plaintiff's motion for reconsideration, arguing that the trial court properly applied existing law in finding that defendant owed no duty to plaintiff and that plaintiff's motion was an attempt to make new arguments that she did not raise earlier. Finally, defendant argued that "even if Plaintiff had received the information sought in the disputed interrogatories, it would *** not change the facts on which this Court granted summary judgment" because it would not "change Live Nation's responsibilities under the Rental Agreement."

¶ 20 While plaintiff's motion for reconsideration was pending, we issued a Rule 23 order[3] resolving defendant Live Nation's interlocutory appeal, *Jones*, 2015 IL App (1st) 142429-U. On June 26, 2015, this court affirmed Judge Snyder's July 8, 2014, order, directing defendant Live Nation to comply with discovery, and we vacated "the civil contempt finding and the $1 a day fine imposed by the trial court on the Merlo law firm." *Jones*, 2015 IL App (1st) 142429-U, ¶ 34. In full, we found: "With respect to the July 8 order, defendant failed to provide a record sufficient to show error. With respect to the August 4 order, we cannot conclude that the second trial court abused its discretion by refusing to vacate the discovery order entered by an earlier judge." *Jones*, 2015 IL App (1st) 142429-U, ¶ 34. Specifically, we found that "the trial court did not abuse its discretion in ordering the interrogatories to be answered when an issue in the case is [defendant Live Nation's] knowledge of the risk of injury when defendant [Live Nation] encouraged the crowd to leave their seats and approach the stage." *Jones*, 2015 IL App (1st) 142429-U, ¶ 1. We stated:

> "Plaintiff's complaint alleges, among other things, that defendant 'acted in a reckless and careless manner without regard for the safety of their audience when they knew or should have known that any movement by a majority of the audience at the same time in the same direction would create a hazard.' Part of plaintiff's proof in this negligence action based on that allegation would be notice and knowledge. As a result, plaintiff would need to know what the defendant knew about what happens when it encourages a crowd to leave their seats and move down towards the stage. Therefore, we cannot say that the trial court abused its discretion ordering the production of information that would show what knowledge the defendant had. If defendant provides the claims requested, plaintiff would have the information to determine that knowledge." *Jones*, 2015 IL App (1st) 142429-U, ¶ 23.

¶ 21 On July 21, 2015, plaintiff filed a reply in the trial court in which she stated that the trial court had denied her "emergency motion[4] seeking to supplement her motion to reconsider with the Appellate Court's Rule 23 opinion." Plaintiff stated that the trial court denied her emergency motion because the appellate court order was not precedential "except to *** support the law of the case." Plaintiff argued that the appellate order "demonstrates that the law

---

[3]A Rule 23 order is "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e)(1) (eff. July 1, 2011).

[4]Plaintiff's emergency motion to supplement her motion for reconsideration does not appear in the record.

of the case was that she was indeed entitled to discovery" because the discovery concerns the foreseeability of her injuries.

On September 16, 2015, despite knowledge of our order, Judge Axelrood denied plaintiff's motion for reconsideration, finding (1) that defendant "did not have control over the section of the [venue] where Plaintiff's injury occurred" and (2) that, because "Plaintiff argue[d] for the first time that Defendant's refusal to answer certain discovery demonstrates it knew or should have known of the dangerous conditions created by the artists," the trial court would "not address arguments that could have been brought during an earlier proceeding." Overall, the trial court found "that it properly applied existing law with respect to whether Defendant owed a duty to Plaintiff."

On October 14, 2015, plaintiff timely filed a notice of appeal, pursuant to Illinois Supreme Court Rules 303 (eff. Jan. 1, 2015) and 304(a) (eff. Feb. 26, 2010), seeking reversals of (1) the trial court's May 21, 2015, order, granting summary judgment to defendant Live Nation and (2) the trial court's September 16, 2015, order, denying plaintiff's motion for reconsideration.

ANALYSIS

On this appeal, plaintiff argues (1) that the trial court erred in granting summary judgment to defendant on grounds that it owed no duty to her because defendant Live Nation, as lessee of the United Center for the Kanye West/Jay Z concert, "possessed" the area where plaintiff was injured and (2) that the trial court abused its discretion by denying plaintiff's motion for reconsideration of summary judgment because the trial court erred in finding that defendant did not possess the area and because the trial court did not allow this court's ruling, compelling discovery, to come to fruition. For the following reasons, we find that it was an abuse of discretion for the trial court to deny plaintiff's motion for reconsideration.

I. Standard of Review

Plaintiff raises two different claims on appeal—contesting (1) the trial court's grant of summary judgment in favor of defendant Live Nation and (2) the trial court's denial of plaintiff's motion for reconsideration—which require different standards of review. *Redmond v. Socha*, 216 Ill. 2d 622, 633 (2005) ("[A] standard of review applies to an individual issue, not to an entire appeal. Each question raised in an appeal is subject to its own standard of review.").

Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 228 (2007). The Illinois Supreme Court has held that "[i]t is a drastic means of disposing of litigation, and this court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party." *Murray*, 224 Ill. 2d at 245-46. "Summary judgment should not be allowed unless the moving party's right to judgment is clear from doubt, because plaintiffs are not required to prove their cases at the summary judgment stage." *Murray*, 224 Ill. 2d at 246. As a result, summary judgment is not appropriate (1) if "there is a dispute as to a material fact" (*Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998)), (2) if "reasonable persons could draw divergent inferences from undisputed material facts" (*Jackson*, 185 Ill. 2d at 424), or (3) if "reasonable persons could differ on the weight to be given the relevant factors" of a legal standard (*Calles*

*v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 269 (2007)). The standard of review is *de novo* for a trial court's grant of a motion for summary judgment. *Murray*, 224 Ill. 2d at 228. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 29    The purpose of a motion to reconsider is to bring to a court's attention (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's previous application of existing law. *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572 (2006); *Chelkova v. Southland Corp.*, 331 Ill. App. 3d 716, 729 (2002). A reconsideration motion is not the place "to raise a new legal theory or factual argument." *North River*, 369 Ill. App. 3d at 572. " 'Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.' [Citation.]" *North River*, 369 Ill. App. 3d at 572 (quoting *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001)). As a result, legal theories and factual arguments not previously made are waived. *North River*, 369 Ill. App. 3d at 572-73. "The allowance of new matter in a motion to reconsider is subject to the trial court's discretion and should not be permitted without a reasonable explanation of why it was not made available at the time of the original hearing." *In re Paternity of Rogers*, 297 Ill. App. 3d 750, 756 (1998). The standard of review is an abuse of discretion for a trial court's denial of a motion to reconsider. *Avenaim v. Lubecke*, 347 Ill. App. 3d 855, 861 (2004). A trial court's decision is considered an abuse of discretion only when it is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Dunmore*, 389 Ill. App. 3d 1095, 1105 (2009).

¶ 30    Turning to the chronology of the case at bar, the trial court granted summary judgment for defendant Live Nation during the pendency of this court's interlocutory appellate review of issues concerning plaintiff's written interrogatories. After this court issued its Rule 23 order (*Jones*, 2015 IL App (1st) 142429-U), compelling defendant Live Nation to answer those interrogatories, the trial court denied plaintiff's motion for reconsideration of the summary judgment order. It is well-settled that "[o]nce the jurisdiction of the appellate court attaches" upon the filing of a notice of appeal, "the trial court retains jurisdiction of a case to hear and determine only those matters which are independent of and *unrelated to that portion of the proceedings that pends on appeal.*" (Emphasis added.) *Brown Leasing, Inc. v. Stone*, 284 Ill. App. 3d 1035, 1044 (1996) (citing *Home Savings & Loan Ass'n v. Samuel T. Isaac & Associates, Inc.*, 99 Ill. App. 3d 795 (1981), and cited with approval in *Childs v. Pinnacle Health Care, LLC*, 399 Ill. App. 3d 167, 178 (2010)). The pendency of an interlocutory appeal "restrains the trial court from entering *any order which would change or modify the order on appeal* or that would have the effect of interfering with the review of that order." (Emphasis added.) *Witters v. Hicks*, 338 Ill. App. 3d 751, 756 (2003). Here, the trial court contravened that rule and denied plaintiff's motion for reconsideration, despite this court's order necessitating discovery, the results of which we deemed integral to "plaintiff's proof in this negligence action." *Jones*, 2015 IL App (1st) 142429-U, ¶ 23.

¶ 31                                   II. Negligence

¶ 32    For the following reasons, we conclude that the trial court abused its discretion by denying plaintiff's motion to reconsider her negligence claim against defendant Live Nation.

¶ 33    The Illinois Supreme Court has long recognized that, "[i]n general, every person owes a duty of ordinary care to guard against injuries to others. [Citation.] A person who breaches this

duty is deemed negligent and may be held financially liable if his conduct proximately causes injury to another." *Karas v. Strevell*, 227 Ill. 2d 440, 451 (2008). To succeed on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty of care, (2) that the defendant breached that duty, (3) that the plaintiff suffered an injury, and (4) that the plaintiff's injury was proximately caused by the defendant's breach of duty. *Calles*, 224 Ill. 2d at 270; *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 32 (2006); *Simmons v. American Drug Stores, Inc.*, 329 Ill. App. 3d 38, 42 (2002). With respect to the second prong, the trial court did not analyze breach of duty as a stand-alone element in its order granting summary judgment for defendant Live Nation because it found that no duty of care existed in the first place. With respect to the third prong, it is not disputed on this appeal that plaintiff sustained injuries from her fall. Thus, we focus on prongs one and four below.

¶ 34                                    A. Duty of Care

¶ 35        The duty of care is the crux of this case. The trial court granted summary judgment on the basis that there was *no evidence* to support defendant Live Nation's duty to plaintiff under theories of *respondeat superior* or premises liability. However, the trial court also precluded plaintiff from obtaining such evidence by preempting this court's order compelling defendant Live Nation to answer plaintiff's written interrogatories. Without the information from discovery, there was, at the very least, an issue of material fact as to whether or not defendant Live Nation owed plaintiff a duty of care. For the reasons we explain below, the trial court prematurely granted summary judgment and abused its discretion by denying plaintiff's motion for reconsideration after plaintiff promptly notified the trial court of this court's order in *Jones*, 2015 IL App (1st) 142429-U, compelling defendant Live Nation to furnish answers to her interrogatories.

¶ 36        "Duty is a question of law." *McKenna v. AlliedBarton Security Services, LLC*, 2015 IL App (1st) 133414, ¶ 22 (citing *Peters v. Riggs*, 2015 IL App (4th) 140043, ¶ 44). The Illinois Supreme Court has held that the " 'touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a *relationship* to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff.' " (Emphasis added.) *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18 (quoting *Marshall*, 222 Ill. 2d at 436); see also *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226 (2010); *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280-81 (2007). The word "relationship" is a proxy "for the sum of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Simpkins*, 2012 IL 110662, ¶ 18. Four axiomatic relationships give rise to an affirmative duty of care: " 'common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation.' " *Simpkins*, 2012 IL 110662, ¶ 20 (quoting *Marshall*, 222 Ill. 2d at 438).

¶ 37        With respect to the fourth relationship, the principles of premises liability were set forth by the Illinois Supreme Court in *LaFever v. Kemlite Co.*, 185 Ill. 2d 380 (1998). A possessor of premises has a duty to guard against harm to an invitee. *LaFever*, 185 Ill. 2d at 391. "A person is a business invitee on the land of another if (1) the person enters by express or implied invitation; (2) the entry is connected with the owner's business or with an activity conducted by the owner on the land; and (3) the owner receives a benefit." *Sameer v. Butt*, 343 Ill. App. 3d

78, 86 (2003) (citing *Leonardi v. Bradley University*, 253 Ill. App. 3d 685, 690 (1993)). This court has previously found that a concert attendee is a business invitee for purposes of determining duty of care. *Roth v. Costa*, 272 Ill. App. 3d 594, 596 (1995). Moreover, "[o]ne who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land." Restatement (Second) of Torts § 383 (1965).

¶ 38    Nevertheless, while "an independent 'direct relationship' between parties may help to establish the foreseeability of the injury to [a] plaintiff *** [it] is not an additional requirement to establishing a duty." *Simpkins*, 2012 IL 110662, ¶ 19. The Illinois Supreme Court has recognized that " 'every person [or business entity] owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.' " *Simpkins*, 2012 IL 110662, ¶ 19 (quoting *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373 (1990) (collecting cases)); see also *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 291-92 (2007) (collecting cases); *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 622 (1955). "Thus, if a course of action creates a foreseeable risk of injury, the individual [or business entity] engaged in that course of action has a duty to protect others from such injury." (Emphasis omitted.) *Simpkins*, 2012 IL 110662, ¶ 19.

¶ 39    Defendant Live Nation argues, and the trial court agreed, that there was no special relationship between defendant Live Nation and plaintiff that would give rise to a duty of care. Specifically, defendant Live Nation advances the argument in its response brief that it owed no duty of care to plaintiff for two reasons: (1) under the rental agreement between defendant Live Nation and United Center JV (rental agreement), (a) defendant Live Nation was not obligated to ensure the safety of, or provide security for, spectators; it supplied security and safeguarded ingress and egress exclusively for its performers; and (b) defendant Live Nation was a licensee with limited control over the venue, not a leaseholder in full possession of the area where plaintiff was injured; and (2) defendant Live Nation did not employ or control the performers who invited thousands of concert attendees, from all seating areas in the venue, to rush the stage. By contrast, plaintiff argued in her motion for reconsideration that the trial court erred in its application of existing law with respect to duty.

¶ 40    First, the focal point of defendant's argument and the trial court's analysis on the issue of duty was the rental agreement, which divides and allocates between defendants Live Nation and United Center JV rights and obligations regarding security and medical personnel, signage, crowd control, insurance, and more for the "Watch the Throne" concerts. However, plaintiff was not a party to this rental agreement. Plaintiff, who was invited by Live Nation to a Live Nation-promoted event, which featured two artists that Live Nation placed in performance, had a relationship with defendant Live Nation. The rental agreement has no bearing on plaintiff's right to bring suit against defendant Live Nation for her injuries. *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). Any dispute concerning the apportionment of liability or contract dispute regarding the particular areas of the venue of which defendant United Center JV did or did not relinquish control, would be for Live Nation

and United Center JV to resolve. Thus, as plaintiff was not a party to the rental agreement, the trial court abused its discretion by using it to determine plaintiff's rights.

¶ 41    Defendant cites *Hougan v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2013 IL App (2d) 130270, ¶ 40, for the proposition that the terms of a lease agreement are relevant to the determination of whether a duty is owed to a third party. In *Hougan*, a vehicle jumped a curb and struck the plaintiff while she was standing on the sidewalk outside a storefront owned by Fridh Corporation and leased by defendant Ulta Salon. *Hougan*, 2013 IL App (2d) 130270, ¶ 2. The trial court granted summary judgment for defendant Ulta Salon because it owed no duty to protect the plaintiff outside of the building that it leased. *Hougan*, 2013 IL App (2d) 130270, ¶ 2. As plaintiff argues in her reply brief, *Hougan* is distinguishable on its face because, in the case at bar, plaintiff's injuries "occurred *on* the premises leased (or licensed) to Live Nation." (Emphasis in original.) Second, even if defendant Live Nation were not in control of the exact area in which plaintiff was knocked down the steps, that fact would be relevant but not determinative of defendant Live Nation's ultimate liability. Premises liability is not the only theory under which plaintiff may recover.

¶ 42    Second, defendant Live Nation argues that it is shielded from liability because it lacked an agency relationship with the "Watch the Throne" performers and thus had no control over one performer's decision to say, "I want everybody to come downstairs to the main floor. We're going to turn this into an MF party. We're all going to get in trouble for this. Come on down."[5] To reiterate what this court previously held in *Jones*, 2015 IL App (1st) 142429-U, ¶ 23:

> "Plaintiff's complaint alleges, among other things, that defendant 'acted in a reckless and careless manner without regard for the safety of their audience when they knew or should have known that any movement by a majority of the audience at the same time in the same direction would create a hazard.' Part of plaintiff's proof in this negligence action based on that allegation would be notice and knowledge. As a result plaintiff would need to know what the defendant knew about what happens when it encourages a crowd to leave their seats and move down towards the stage. If defendant provides the claims requested, plaintiff would have the information to determine that knowledge."

¶ 43    In this case, the record lacks evidence to show that defendant Live Nation had knowledge or notice that its performers would expressly induce a situation in which thousands of concert attendees would rush the main floor *because* the trial court did not abide by this court's order for defendant Live Nation to answer plaintiff's written interrogatories concerning foreseeability. Shifting the focus away from premises liability and *respondeat superior*, even if defendant Live Nation was not in possession of the area in which plaintiff sustained injuries, and not in control of the performer's interactions with the crowd, the question remains whether defendant Live Nation was on notice that this type of "crowd surge" and, in turn, plaintiff's type of injury, were foreseeable. Defendant Live Nation would be uniquely in possession of this knowledge, while plaintiff would not be privy to the risk. In his affidavit, Jan Berger, defendant's vice president of risk management, averred that "there are approximately 500 claims pending against defendant in jurisdictions around the United States." If, for example, a number of those claims involved the same or similar scenario that occurred in the case at bar, these events may be reasonably foreseeable and defendant Live Nation may have owed

---

[5]This quotation appears in plaintiff's direct examination.

plaintiff a duty of care. Defendant argues that "a person's duty can extend no further than the person's [or business entity's] right, power, and authority to implement it." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 47 (2004). However, if the event that caused plaintiff's injury was a foreseeable phenomenon, defendant Live Nation may have had a duty to protect concert attendees from its recurrence.

¶ 44　　In sum, there was a dispute of material fact with respect to the duty of care that defendant Live Nation owed plaintiff, which would have been resolved had the trial court permitted defendant Live Nation to comply with this court's discovery order on June 26, 2015. Thus, we reverse the trial court's denial of plaintiff's motion for reconsideration and remand for further proceedings in light of our opinion today and our prior Rule 23 order.

¶ 45　　　　　　　　　　　　　　　B. Proximate Cause

¶ 46　　The trial court found, and we agree, that there was a dispute of material fact with respect to the fourth prong of negligence, namely, proximate cause. To overcome a motion for summary judgment, plaintiff must demonstrate that her injury was proximately caused by defendant Live Nation's breach of duty or, at the very least, that there is a genuine issue of material fact surrounding that issue. See *Calles*, 224 Ill. 2d at 270. To begin with, "it is axiomatic that proximate cause is ordinarily a question of fact to be decided by the jury." *McKenna*, 2015 IL App (1st) 133414, ¶ 39. Proximate cause is comprised of two requirements: cause in fact and legal cause. *McKenna*, 2015 IL App (1st) 133414, ¶ 37. "Cause in fact can be established if a defendant's conduct can be deemed to be a substantial factor in bringing about the injury. [Citation.] If reasonable minds could differ on whether the conduct was a substantial factor, the question is 'for the jury to decide.' " *McKenna*, 2015 IL App (1st) 133414, ¶ 37.

¶ 47　　In the case at bar, plaintiff argues that defendant Live Nation's performer instructed concert attendees throughout all levels of the venue to leave their seats, without guidance, in the dark, and come down to the lower level to have a party. Plaintiff argues that this was a substantial factor in her injuries as she was knocked down in the midst of a "crowd surge" that was the direct result of the "unsafe" request of defendant Live Nation's performer. Plaintiff alleges that this series of events may have been foreseeable by defendant Live Nation, giving rise to a duty of care. If the ordered discovery shows this allegation to be true, then plaintiff may be able to demonstrate that defendant Live Nation's conduct was a substantial factor in bringing about her injuries. Notably, in its order granting summary judgment, the trial court found "there is a question of fact for the jury as to whether the independent act of the man who ran into Plaintiff was the sole proximate cause of her injury" or if her injury was attributable to the "crowd surge" and "chaotic" aisles at the venue. We agree.

¶ 48　　Next, legal cause is "a question of foreseeability, where one determines whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *McKenna*, 2015 IL App (1st) 133414, ¶ 38. The foreseeability prong is one that this court examined on June 26, 2015, in *Jones*, 2015 IL App (1st) 142429-U. As discussed above, *supra* ¶¶ 35-44, there was a genuine issue of material fact with respect to defendant Live Nation's knowledge and/or notice that its performers would summon an entire venue of people to the stage near the conclusion of the concert when those who did not desire to partake in the "party" would attempt to exit the venue.

¶ 49 In sum, the proximate cause prong of the test for negligence weighs against both the grant of summary judgment and the denial of plaintiff's motion for reconsideration.

¶ 50                                                III. Waiver

¶ 51 Finally, defendant Live Nation's argument that plaintiff waived her argument on the motion for reconsideration is unavailing. On that motion, plaintiff argued that the trial court erred in its application of the law on duty because, as confirmed by this court's order in *Jones*, 2015 IL App (1st) 142429-U, whether defendant Live Nation had the alleged knowledge and notice of its performers' plans to encourage all concert attendees to rush the main floor creates a genuine issue of material fact regarding duty. Defendant Live Nation insists, and the trial court agreed, (1) that plaintiff's argument on the motion for reconsideration was waived because she did not introduce it during initial briefing for summary judgment and (2) that, "even if Plaintiff had received the information sought in the disputed interrogatories, it would *** not change the facts on which [the trial court] granted summary judgment" because it would not "change Live Nation's responsibilities under the Rental Agreement." These arguments are unpersuasive for two reasons. First, while it is true that " '[t]rial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling' " (*North River*, 369 Ill. App. 3d at 572 (quoting *Landeros v. Equity Property & Development*, 321 Ill. App. 3d at 65)), that is not what happened here. Plaintiff promptly notified the trial court of this court's order once it was entered, compelling defendant Live Nation to supply answers to interrogatories. Second, as discussed above, *supra* ¶ 40, the rental agreement does not bind plaintiff, a nonparty. As such, the trial court abused its discretion when it refused to consider this court's Rule 23 order.

¶ 52                                                CONCLUSION

¶ 53 For the foregoing reasons, we find that the trial court abused its discretion when it denied plaintiff's motion for reconsideration, and we reverse and remand for further proceedings. In sum, without the answers to plaintiff's interrogatories, we cannot conclude as a matter of law that defendant Live Nation owed no duty of care to plaintiff. The answers speak directly to defendant Live Nation's notice and knowledge of the frequency with which its performers encourage a crowd of people to leave their seats and move down toward the stage and concert attendees' injuries that may result therefrom.

¶ 54 Reversed and remanded.