2019 IL App (1st) 190968-U

FIFTH DIVISION
November 15, 2019

Nos. 1-19-0968, 1-19-0997 cons.

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| BENJAMIN NELSON, as the Guardian of the Person of Jeff Nelson, a Disabled Person, and CANADIAN IMPERIAL BANK OF COMMERCE (CIBC) PRIVATE EQUITY WEATH MANAGMENT, as the Guardian of the Estate of Jeff Nelson, a Disabled Person, | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | |
| v. | No. 18 L 5537 |
| THC-CHICAGO, INC. d/b/a KINDRED HOSPITAL SYCAMORE, a Corporation, and KINDRED HEALTHCARE, INC., a Corporation, | Honorable Moira S. Johnson, |
| Defendants-Appellants. | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    ***Held:***    The circuit court abused its discretion when it granted the plaintiffs' motion to reconsider the court's prior decision to grant the defendants' motion to transfer based on the doctrine of *forum non conveniens*. We reverse and remand and reinstate the circuit court's previous order granting the defendants' motion to transfer.

¶ 2 Plaintiffs Benjamin Nelson, as the guardian of the person of Jeff Nelson, a disabled person, and Canadian Imperial Bank of Commerce Private Wealth Management (CIBC), as the guardian of the estate of Jeff Nelson, brought a negligence action in the circuit court of Cook County against defendants THC-Chicago, Inc., d/b/a Kindred Hospital Sycamore and Kindred Healthcare, Inc. (collectively, Kindred). Kindred moved to transfer the lawsuit to DeKalb County under the doctrine of *forum non conveniens*. The circuit court granted that motion. Plaintiffs then filed a motion to reconsider, which the circuit court also granted, resulting in the case remaining in Cook County.

¶ 3 On permissive interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Nov. 1, 2017), Kindred argues that the circuit court abused its discretion when it granted plaintiffs' motion to reconsider the order granting transfer of this matter to DeKalb County under the doctrine of *forum non conveniens*. We reverse.

¶ 4 BACKGROUND

¶ 5 THC-Chicago owns and manages a transitional care and long term acute care hospital, Kindred Hospital-Sycamore (Kindred-Sycamore), which provides specialized care to stroke or brain injury patients including patients that have suffered traumatic or atraumatic intracranial bleeding. On April 4, 2018, Kindred-Sycamore, which is located in DeKalb County, admitted Jeff Nelson as a patient.

¶ 6 On May 29, 2018, Benjamin Nelson, a resident of Kane County, filed his initial complaint in the circuit court of Cook County, alleging negligence against Kindred stemming from two falls sustained by Jeff while he was a patient at Kindred-Sycamore: one on April 6, 2018, and a second on April 10, 2018.

¶ 7 Count I alleged that Kindred-Sycamore was negligent by, among other things, failing to allocate sufficient resources to adequately staff the hospital to provide appropriate supervision, monitoring, fall prevention, and patient care when it knew or should have known that the hospital was understaffed. It also alleged that the hospital failed to properly assess and implement a care plan to address Jeff's risk for falls and failed to provide necessary medical supplies, including appropriate fall prevention devices and equipment.

¶ 8 Count II alleged that Kindred Healthcare owns, staffs, and manages various facilities throughout Cook County, including two facilities in Chicago, in addition to Kindred-Sycamore. It alleged that Kindred Healthcare, through its agents, knew or should have known that Jeff was recovering from surgery and was at a high risk for falls. The count also alleged that Kindred Healthcare was negligent in its duty to exercise reasonable care, which included, among other things, preventing him from falling and sustaining injuries.

¶ 9 On September 13, 2018, Benjamin filed a petition in the circuit court of Cook County for appointment of guardian of a person with a disability under section 11a-8 of the Illinois Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-8 (West 2018)). The petition requested that Jeff be adjudged a person with a disability and that Benjamin be appointed as guardian of the person for Jeff. In the petition, Benjamin stated under penalty of perjury that Jeff "resides in Cook County," but listed Jeff's place of residence as Batavia, Illinois, which is in Kane County. Benjamin also stated in the petition that Jeff resided in a facility at "Warren Barr Gold Coast, 66 W. Oak Street, Chicago, Illinois." The petition sought the appointment of CIBC as guardian of Jeff Nelson's estate, listing the bank's address as its office in downtown Chicago.

¶ 10    On October 12, 2018, the Probate Division of the circuit court of Cook County appointed Benjamin as guardian of the person and CIBC as guardian of the estate of Jeff. The order included a statement listing Jeff's Batavia address.

¶ 11    On the same day, Benjamin filed an amended negligence complaint, which added CIBC as a plaintiff, but otherwise tracked the allegations of the original complaint.

¶ 12    On January 8, 2019, Kindred moved to transfer the negligence case to DeKalb County based on the doctrine of *forum non conveniens*. Kindred argued that this case has no meaningful factual connections to Cook County and instead has extensive factual connections to DeKalb County. All of the allegedly negligent medical care that Jeff received from Kindred occurred in DeKalb County. Kindred submitted eight affidavits of persons who provided care to or possessed knowledge of relevant facts concerning Jeff, all of whom reside in DeKalb County. Each stated that it would be more convenient if this matter were litigated in DeKalb County. Kindred noted that Benjamin resides in Kane County, which is also where Jeff lived before he was admitted to Kindred-Sycamore. Kindred also provided a list of witnesses, including those believed to be closely involved in Jeff's treatment at Kindred-Sycamore and expected to be called at trial, most of whom reside in either DeKalb, Kane, DuPage, Rockford, or Ogle Counties. The one witness listed from Cook County was Dr. Peter Berger, a radiologist who reviewed a CT scan of Jeff Nelson's brain during a critical juncture of his treatment.

¶ 13    Kindred's answers to plaintiffs' *forum non conveniens* interrogatories disclosed that THC-Chicago owned three hospitals in Cook County at the time the incidents in question occurred. THC-Chicago is an Illinois corporation registered in Cook County. Kindred-Sycamore is the only hospital that THC-Chicago owns in DeKalb County. THC-Chicago's corporate office is located in Louisville, Kentucky. The answers also disclosed the names and addresses of a key

4

treating witness, Kathleen Klus, and Kindred-Sycamore's director of quality management, Theresa Hove, each of whom reside in DeKalb County. In addition, Kindred disclosed that Kindred-Sycamore staff members received previous training at one of THC-Chicago's Cook County locations.

¶ 14 Kindred contended that the private and public interest factors strongly favored transfer of this case to DeKalb County. As to the private interest factors, Kindred argued that it would be more convenient to transfer the case to DeKalb County because (1) the alleged negligence occurred in DeKalb County; (2) the vast majority of witnesses involved in Jeff's treatment expected to be called at trial have no connection to Cook County and instead live and/or work in DeKalb, Ogle, and Kane counties; (3) Benjamin's choice of forum is entitled to less deference because he failed to file suit in the county where the cause of action arose; (4) the witnesses and sources of evidence are located in DeKalb County; (5) it would be more convenient, economical, and expeditious for the DeKalb County Sheriff's Department to serve and enforce subpoenas for this matter considering the location of the witnesses; (6) the cost of obtaining the trial appearance of willing witnesses would be substantially less if the venue was located in DeKalb County; and (7) the possibility of a jury viewing the premises weighed in favor of transferring the case to DeKalb County. In short, Kindred argued that DeKalb County had a substantial nexus to the factual allegations in plaintiffs' amended complaint.

¶ 15 Kindred also argued that the public interest factors strongly favored transferring this case to DeKalb County. Kindred contended that the circuit court of Cook County is far more congested than the circuit court of DeKalb County, noting that in 2017, only 58 new cases were filed in DeKalb County in comparison to the 7,093 new cases filed in Cook County. Kindred argued that DeKalb County has local interest in this matter because the alleged negligence

occurred there. Finally, Kindred contended that it would be an unfair burden to impose jury duty on the residents of Cook County, who have no connection with the pending litigation of this matter.

¶ 16    Plaintiffs responded to the motion to transfer, arguing that this case has a meaningful connection to Cook County because Kindred owns and/or operates six healthcare facilities in Cook County and, therefore, Cook County jurors have a substantial interest in this litigation. Plaintiffs contended that Jeff underwent extensive treatment in Chicago following the incidents at Kindred-Sycamore and that Kindred's list of medical witnesses failed to include those treaters. Plaintiffs argued that a viewing of the hospital room where the incidents occurred is rarely or never called for in medical negligence cases. Kindred's registered agents are located in Cook County. Most significantly for plaintiffs, critical medical witnesses are "scattered" amongst the counties "or reside in Cook or substantially closer to Cook than DeKalb." Plaintiffs attached as an exhibit a list of treaters, which included the names and addresses of the medical professionals, the counties of residence, and the distances to the circuit courts of Cook and DeKalb Counties. However, this list did not include the nature of the treatment provided by these professionals for purposes of delineating whether the treatment occurred during the negligence in question or thereafter.

¶ 17    Plaintiffs' response also included the affidavits of Jeff's family members, who attested that Cook County is more convenient than DeKalb County. In addition, plaintiffs included the affidavit of Dr. Sangeeta Driver, who treated Jeff at Shirley Ryan AbilityLab in Chicago after the incidents in question and stated that Cook County is more convenient than DeKalb County. Plaintiffs also attached an exhibit of an internet-based list of Kindred facilities located in Illinois.

6

¶ 18    Plaintiffs emphasized in their response that critical medical providers who treated Jeff after the incidents either reside in Cook County or reside significantly closer to Cook County than DeKalb County and that the Illinois Supreme Court in *First American Bank v. Guerine*, 198 Ill. 2d 511 (2002) held that Cook County was a proper forum in a case even though only one witness resided in Cook County. Plaintiffs noted that Hove, Kindred-Sycamore's director of quality management, "has been able to travel to Washington D.C. on what appears to be leisure which begs into question why she cannot drive to Cook [County]," citing her online Facebook account. Plaintiffs contended that Cook County jurors have a significant interest in deciding this controversy because Kindred owns and operates similar facilities in Cook County and that jurors in Cook County "one day could later be a patient at one of the six (6) 'Kindred' Cook facilities where it would be believed that Defendants would want to deliver the same levels of care to their patients regardless of county." Plaintiffs also argued that Kindred failed to establish why it would be inconvenient for their witnesses to come to Cook County for one day to testify. In addition, plaintiffs noted that Cook County is a closer and more convenient venue for Kindred's corporate witnesses than DeKalb County, as would be any out-of-state liability and damage experts expected to testify at trial. Finally, plaintiffs argued that Kindred "do[es] significantly more business in Cook County versus DeKalb County" because it owns or operates more facilities in Cook County than DeKalb County.

¶ 19    The circuit court also considered plaintiffs' responses to Kindred's *forum non conveniens* interrogatories, which included a request for the names, addresses, and counties of residence of each person expected to testify regarding the factual allegations in plaintiffs' amended complaint. Plaintiffs responded that "it is simply too early for Plaintiff to determine who Plaintiff intends to call at trial as no depositions have proceeded in this matter and because Plaintiff is not

in possession of Defendants' production. In addition, Plaintiff has not selected his testifying experts." Kindred submitted its responses to plaintiffs' *forum non conveniens* interrogatories on December 19, 2018. Plaintiffs submitted their responses to Kindred's *forum non conveniens* interrogatories on January 8, 2019. Further, in response to the request to "[s]tate the Plaintiff's full name, age, home address along with the county of residence," plaintiffs provided the information for Benjamin, but not CIBC.

¶ 20 On March 11, 2019, the circuit court of Cook County issued a written order granting Kindred's motion to transfer.[1] The court first considered the private interest factors in its *forum non conveniens* analysis. The court noted that when a plaintiff is not a resident of his chosen forum, his choice is given somewhat less deference and that, similarly, when the site of the accident is chosen, the choice is convenient because the litigation has the aspect of being " 'decided at home,' " quoting *Guerine*, 198 Ill. 2d at 518. The court found that "Cook County is not convenient for Defendant and DeKalb County is more convenient." The court also found that Cook County is not more convenient than DeKalb County for Benjamin. The court stated that the vast majority of witnesses in Jeff's treatment expected to be called at trial live and/or work in DeKalb, Ogle, or Kane counties. The court noted the shorter times and distances to travel to the DeKalb County courthouse in comparison to the Cook County courthouse. Although plaintiffs argued that the witnesses were scattered among several counties, the court stated that they "ignore[d] the fact that the nurses, certified nursing assistants, and physicians who were involved in the treatment of Jeff Nelson at Kindred Hospital, including the attending physician, work

---

[1]    Although plaintiffs' amended complaint included CIBC as a plaintiff, the caption for the circuit court's order on March 11, 2019 listed only Benjamin as a party plaintiff. Indeed, CIBC is not mentioned in the order and it appears from the record that CIBC's "residence" was neither argued by plaintiffs in response to Kindred's motion to transfer nor considered by the court in its decision to grant the motion to transfer.

and/or live collectively 352 miles away from the DeKalb County Courthouse and 2,177 miles away from the Cook County Courthouse, these witnesses are five times closer to DeKalb than Cook County."

¶ 21    Next, the circuit court found that the relative ease of access to sources of testimonial, documentary, and real evidence "also shifts the balance of this *forum non conveniens* analysis in favor of transferring to DeKalb County." Furthermore, the court stated that "the relevant caselaw discourages court[s] from giving the location of Plaintiff's treating physicians whose conduct is not at issue 'undue weigh[t].' " citing *Bruce v. Atadero*, 405 Ill. App. 3d 318, 330 (2010). The court also found DeKalb County is a more convenient forum when considering the compulsory process of securing unwilling witnesses and the ability to view the site of the accident.

¶ 22    The circuit court then turned to the public interest factors, finding that the interest in deciding the alleged controversy locally and the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to this litigation strongly favored transfer of the case to DeKalb County. The court found a greater nexus of the factual allegations to DeKalb County, where the acts of alleged negligence and criticized medical treatment occurred. The court also considered data regarding the time lapse from the filing of a case to the date of reaching a verdict. A 2017 report stated the circuit court of Cook County received 400 cases that took approximately 32.2 months to reach a verdict in comparison to DeKalb County, which received only 2 cases that took approximately 30.3 months to reach a verdict. The court concluded from this data that DeKalb County court dockets are less congested that Cook County.

¶ 23    Finally, the circuit court stated that it was required to focus on the jurisdiction "with the most predominant connection to the litigation," and concluded in this case, "that jurisdiction is *unequivocally* DeKalb County, Illinois." (Emphasis added.)

¶ 24    On March 19, 2019, plaintiffs moved to reconsider the circuit court's decision to grant Kindred's motion to transfer. Plaintiffs argued the court "misapplied existing *forum non conveniens* case law in offering undue weight to various less relevant factors while not offering deserved deference to more consequential factors." Plaintiffs challenged the court's finding that the "vast majority" of witnesses are located in DeKalb County. Plaintiffs pointed to an exhibit that they had attached to their response to the motion to transfer, "which lists 30 critical doctors and medical professionals that treated Mr. Nelson following the accident. Of the 30 doctors, 20 reside in Cook [County]," including Dr. Driver, who they described as "a seminal causation and permanency witness." Plaintiffs again argued that the majority of witnesses expected to testify are "scattered" among the counties, in addition to out-of-state witnesses. Plaintiffs contended that, although Kindred submitted eight affidavits, the evidence would show that only one of those affiants was actually in the room with Jeff Nelson at the time he fell, and that Kindred failed to mention the significance of Dr. Berger, his treating radiologist, and Dr. Andrew Ta, his treating neurologist. Plaintiffs argued that Kindred should have provided affidavits from these doctors.

¶ 25    Plaintiffs attached to their motion a more detailed witness list in that it included a description of the services each of the medical treaters provided, however, no new medical professionals were added to this list, which shows Dr. Berger resides in Lake County and Dr. Ta resides in DuPage County. The new list also did not clarify whether some of these witnesses treated Jeff before, during, or after the alleged negligence occurred. In addition, plaintiffs

attached as exhibits orders from other cases previously entered by the same circuit judge in which the court denied the defendants' motions to transfer and a copy of a preliminary radiology report completed by Dr. Berger on April 11, 2018. Otherwise, plaintiffs provided no new evidence supporting reconsideration of the court's *forum non conveniens* analysis.

¶ 26    Kindred responded that plaintiffs delineated no legal basis to file a motion to reconsider because they failed to identify any error in the circuit court's application of the law in its decision to grant the motion to transfer. Kindred argued that plaintiffs simply disagreed with the court's discretion used to apply the facts of this case to the existing law and the factors to be weighed in deciding a motion to transfer based on the doctrine of *forum non conveniens*. The weight plaintiffs requested the court to attribute to some *forum non conveniens* factors but not others ran contrary to the applicable *forum non conveniens* precedent. Kindred also responded that Dr. Berger and Dr. Ta were not their employees and, thus, it did not obtain affidavits from these two physicians, so as not to violate the *Petrillo* doctrine (*Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 596 (1986) (public policy prohibits *ex parte* conferences between defense counsel and a plaintiff's treating physician)). In short, Kindred argued that plaintiffs' motion to reconsider merely restated the same arguments previously rejected by the court and that the court considered and analyzed all the evidence concerning application of the private and public interest factors.

¶ 27    Plaintiffs' reply restated the same arguments, but added that the circuit court should consider a recently decided a recently decided case, *Johnson v. Nash*, 2019 IL App (1st) 180840, which affirmed the circuit court's decision denying the defendants' motions to transfer a negligence action from Cook County to Kane County.

11

¶ 28     On April 11, 2019, the circuit court heard oral argument on plaintiffs' motion to reconsider. Plaintiffs for the first time requested that the court consider that CIBC is a resident of Cook County in its *forum non conveniens* analysis. Defense counsel responded that plaintiffs forfeited this argument because they failed to raise it previously. Plaintiffs also argued that in light of the holding in *Johnson*, the court should give more weight to the location of treating physicians.

¶ 29     Following argument, the circuit court granted plaintiffs' motion to reconsider "based upon the new law" in *Johnson*, requiring more weight to be applied to the residency of the treating physicians, "and the analysis of [CIBC] being the guardian of a disabled person," giving the residency of CIBC "more significant weight than *** in the original decision." The written order entered granting plaintiffs' motion to reconsider again did not list plaintiff CIBC as a party in the caption.

¶ 30     Kindred filed a motion to reconsider and for a protective order directing plaintiffs within five days to provide any and all documentation from CIBC involving its role as the guardian of the estate of Jeff. Kindred argued that CIBC is a "nominal party" entitled only to minimal consideration in a *forum non conveniens* analysis, citing *Moore v. Chicago & N.W. Transportation Co.*, 99 Ill. 2d 73 (1983) in support. Kindred also contended that plaintiffs raised the issue of CIBC's residency for the first time during the April 11, 2019 oral argument on their motion to reconsider and provided no documentation showing that CIBC intends to be present at trial. Further, it argued that the issue of CIBC's residency is not "new evidence," as the circuit court was in possession of the plaintiffs' amended complaint when it issued its ruling granting the motion to transfer. Plaintiffs failed to disclose any CIBC representatives in their *forum non conveniens* discovery responses. Indeed, the answers to Kindred's interrogatories were not

verified by a CIBC representative. Kindred argued that plaintiffs' "sudden proclamation of the alleged importance of a Bank representative in this *forum non conveniens* issue comes only after the Court granted Kindred's Motion to Transfer to DeKalb County."

¶ 31 The circuit court entered a briefing schedule and ordered plaintiffs to (1) produce all documentation regarding CIBC's involvement as guardian of the estate of Jeff; (2) provide updated information as to Jeff's current residence; and (3) produce a representative from CIBC for deposition. Plaintiffs produced the September 13, 2018 petition for appointment of guardian. Plaintiffs disclosed that Jeff currently resides with his brother in Kane County, "with plans to return to Shirley Ryan AbilityLab *** if TBI [traumatic brain injury] rehab is an option for him." Daniel Sullivan, a managing director for CIBC, testified by deposition on May 3, 2019 that he would be present at trial. Sullivan stated that he did not plan on attending trial, but was doing so at the request of plaintiffs' counsel. His proposed trial testimony would serve to educate the jurors, in the event an award is given to plaintiffs, as to how that award would be protected and distributed by CIBC. He stated that he had neither seen a copy of the amended complaint from this case nor attended the probate proceedings involving Jeff. Sullivan has never met any members of the Nelson family. He was not aware of whether the Nelson family created an estate plan for Jeff and had no knowledge of the financial situation of the Nelson family. He stated that the Nelson family is not legally obligated to stay with CIBC for Jeff's estate planning. Finally, he testified that CIBC has bank branches located outside of Cook County, including Kane County, where Jeff resides. Sullivan stated that, if necessary, CIBC representatives could travel to Jeff's residence to provide necessary guardianship services.

¶ 32 During oral argument on Kindred's motion, plaintiffs' counsel stated that during an earlier status conference in this matter, the circuit court would not "allow this case to go forward

on behalf of [Jeff] unless appropriate guardianships are set up if this is truly his disability." Plaintiffs' counsel then explained how he selected CIBC to serve as guardian of the estate. Plaintiff's counsel stated that his firm used "CIBC extensively *** in the past." He explained that CIBC has branches throughout Illinois including in Mokena and in DuPage County, "[b]ut these specific services are handled in Chicago," where CIBC maintains its principal place of business. Plaintiffs' counsel continued, "[s]o this argument that we picked up the phone and called a Cook [County] bank and we tried to establish a Cook connection only came after this Court ordered us to set up a guardianship. And we chose CIBC, because we've worked with them in the past. We trust them as a fiduciary on behalf of our clients." Further, he stated that, "in terms of the Cook connection, it's because CIBC Bank USA is a principal here in Chicago. They're not in DeKalb, they're not in Oglesby [*sic*] County or Lake County, they're here in Chicago. And if you want these services on behalf of a client, Chicago being the largest city in the state, you have to go to Chicago."

¶ 33    The circuit court thereafter stated, "to make the record clear that there is a pending Cook County disabled adult case pending in Cook County. Did the Court consider anything about the fact that the defendant is claiming [Jeff] who is the disabled adult lived somewhere other than Cook County?" Plaintiffs' counsel replied that he could not specifically recall, but stated that he anticipated Jeff would continue to receive treatment at Shirley Ryan AbilityLab and that "the goal is to get him into a brain specialized hospital like Shirley Ryan, where he can be an inpatient." Defense counsel noted that, at the time Benjamin filed the petition for appointment of guardian, he listed Jeff's residence in Batavia. Defense counsel stated:

> "[T]he petition was filed by Benjamin Nelson at the behest of his Cook County
>
> lawyer. So the fact that there's an order coming from a probate court in Cook

14

County, it's only because of the request of plaintiff's counsel and the petition itself on its face is inaccurate. That's a concern. That goes along with my concern overall in terms of the venue manipulation that has been going on."

Defense counsel argued that plaintiffs never sought to amend the petition and raised the issue of "whether that petition should have even been granted based on the information provided to the probate court."

¶ 34    On May 10, 2019, the circuit court denied Kindred's emergency motion to reconsider. In its written order, the court completed an entirely new *forum non conveniens* analysis, this time specifically finding that Cook County is the more convenient forum. The court found that CIBC's role as the appointed guardian of the estate of Jeff was not nominal considering the pending probate action in the circuit court of Cook County. The court, however, did not address the inaccuracy of the petition for appointment of guardian. The court stated that CIBC "must account to the Probate Court for any sums received and distribution of such sums would be under the jurisdiction of the Probate Court throughout the entire life of Jeff Nelson," in contrast to *Moore*, which involved the appointment of a special administrator by a Wisconsin court in a wrongful death case. The court gave deference to plaintiffs' choice of forum, stating that "CIBC is located in Chicago," and "is a critical witness that will be attending trial and sitting at the counsel's table. Plaintiffs will move to have this representative testify to explain to jurors how an award would be guarded by the bank for the care, treatment, and needs of Jeff Nelson."

¶ 35    The circuit court also reversed its previous findings as to the private and public interest factors in its *forum non conveniens* analysis. The court found that Kindred failed to meet its evidentiary burden to demonstrate that plaintiffs' chosen forum is inconvenient and that DeKalb is more convenient to all parties. This time, the court gave greater weight to the anticipated

testimony of medical professionals who treated Jeff *after* the incidents in question occurred than to those who were providing care to him at the time of the alleged negligence. The court stated it "admits that it previously erred in the application of law, noticing now that in the case at bar witnesses are scattered throughout many counties." The court cited *Johnson*, stating that Jeff "spent only 2% of his time treating in DeKalb, while each and every other provider was in Cook or closer to Cook than DeKalb. This case will not be heavily litigated on liability; instead, this trial will be focused on causation and damages." For this reason, the court placed more emphasis on Jeff's treaters.

¶ 36    Next, the circuit court concluded that the relative ease of access to sources of testimonial, documentary, and real evidence did not shift the balance in favor of transferring the case to DeKalb County. The court gave more weight to the anticipated testimony of Dr. Driver than Tamara Nicol, the certified nursing assistant who was the only person to witness the alleged fall incident on April 10, 2018. Nicol resides in DeKalb County while Dr. Driver resides in Cook County. The court stated that Nicol's testimony "could easily be obtained by deposition." The court also relied upon a list of 30 medical professionals that plaintiffs produced, of whom 20 reside in Cook County, 7 in DuPage County, 2 in Kane County, and 1 in Kane County. In addition, the court stated that technology allows documents to be copied and transported easily and, therefore, the predominant location of documents in DeKalb County is of less importance. The court also found that both DeKalb and Cook counties have compulsory process over witnesses in Illinois and that the most convenient county for out-of-state witnesses is Cook County. The court stated it "admits that a DeKalb County jury would be better situated to view the hospital room where Mr. Nelson was cased to fall. However, there is nothing regarding the

scene of the hospital room that is at issue in this litigation and this factor alone is insufficient to warrant transfer."

¶ 37   As to the public interest factors, the circuit court found "the interest in deciding the alleged controversy locally and the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation *** do not weigh strongly in favor of a transfer." The court stated that Kindred maintains three hospitals in Cook County and derives more revenue in Cook County than DeKalb County, where it has only one hospital. Thus, Cook County jurors have an interest in the litigation. The court also found that, although the circuit court of Cook County "is far more congested" than DeKalb, " 'court congestion, by itself is relatively insignificant and is insufficient to justify transfer of venue when none of the other relevant factors weigh[] strongly in favor of transfer,' " quoting *Dawdy v. Union Pacific R.R.*, 207 Ill. 2d 167, 181 (2003).

¶ 38   On June 4, 2019, Kindred filed its petition for leave to appeal under Rule 306(a)(2), which we granted on June 28, 2019.

¶ 39                                         ANALYSIS

¶ 40   Kindred argues that the circuit court abused its discretion when it granted plaintiffs' motion to reconsider. Kindred contends that the court abused its discretion in its *forum non conveniens* analysis because the negligence action has no meaningful nexus to Cook County. Instead, this case stems from medical care rendered in DeKalb County by DeKalb County residents to a resident who is foreign to the chosen venue. Finally, Kindred argues that the court abused its discretion by relying upon unsupported argument when it granted plaintiffs' motion to reconsider.

17

¶ 41                                    Standard of Review

¶ 42    Under Rule 306(a)(2), "[a] party may petition for leave to appeal to the Appellate Court from *** an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*, or from an order of the circuit court allowing or denying a motion to transfer a case to another county within this State on such grounds." Ill. S. Ct. R. 306(a)(2) (eff. Nov. 1, 2017). In this case, Kindred is appealing the circuit court's judgment granting plaintiffs' motion to reconsider, which reversed the court's own decision to grant Kindred's motion to transfer this case from Cook County to DeKalb County.

¶ 43    The purpose of a motion to reconsider is to bring to the circuit court's attention a change in the law, an error in the court's previous application of existing law, or newly discovered evidence that was not available at the time of the prior hearing or decision. *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 34; *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶ 29. Newly discovered evidence for motions to reconsider is defined as evidence that was not available at the time of the prior order or hearing. *Emrikson*, 2012 IL App (1st) 111687, ¶ 30 ("there was no reason for the circuit court to reconsider its decision on the basis of this evidence" where the plaintiff failed to provide an explanation as to why she was unable to learn of it prior to the original hearing). A party may not raise a new legal theory or factual argument in a motion to reconsider. *Jones v. Live Nation Entertainment, Inc.*, 2016 IL App (1st) 152923, ¶ 29. Indeed, legal theories and factual arguments not previously made are waived. *Id.*; see also *North River Insurance Co. v. Grinnell Mutual Reinsurance Co.*, 369 Ill. App. 3d 563, 572-73 (2006). A circuit court should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001).

¶ 44    When a motion to reconsider is based on new evidence, facts, or legal theories not presented in the prior proceedings, the standard of review is abuse of discretion. *Belluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 20. An abuse of discretion occurs when a circuit court's decision is arbitrary, fanciful, unreasonable, or where no reasonable person would adopt the court's view. *Id*. However, we review *de novo* whether the circuit court erred in its previous application of existing law. *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 96 (2004); *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002). In addition, a circuit court is entitled to considerable discretion when ruling on a *forum non conveniens* motion and, therefore, we review the decision to grant or deny such motion for an abuse of discretion. *Guerine*, 198 Ill. 2d at 515.

¶ 45        The Circuit Court's Decision to Reverse Itself on *Forum Non Conveniens*

¶ 46    In this case, the circuit court reversed its prior decision to transfer the lawsuit because: (1) for the first time in this matter, it gave deference to CIBC, a plaintiff and "critical witness," who has its principal place of business in Cook County, and (2) following the newly decided *Johnson* case, it gave greater weight to the anticipated testimony of medical professionals who treated Jeff after the alleged negligence occurred.

¶ 47    We find that the circuit court correctly decided to transfer this case to DeKalb County in its initial ruling on Kindred's motion. We agree with the court's thoroughly extensive and appropriate *forum non conveniens* analysis in its March 11, 2019 order.

¶ 48    First, we note Benjamin's petition for appointment of guardian of a person, which appears to have failed to comply with the Probate Act. Section 11a-7 of the Probate Act states that "[i]f the alleged ward is a resident of this State, the proceeding shall be instituted in the court of the county in which he resides." 755 ILCS 5/11a-7 (West 2018). When Benjamin filed the

petition, he listed Jeff's residence as Batavia, Illinois, which is located in Kane County. Likewise, the statement of right to petition for termination of adjudication of disability which the circuit court issued to Benjamin reflects that Jeff resides in Batavia. Accordingly, under section 11a-7 of the Probate Act, Benjamin was required to file his petition for appointment of guardian in Kane County.[2]

¶ 49    Due to Jeff's disability, appropriate guardianship under the Probate Act was required. According to Sullivan's deposition testimony, CIBC has a bank branch located in Kane County, where Jeff currently resides. Although CIBC performs its guardianship services out of its Chicago headquarters, Sullivan also testified that CIBC would be willing to travel to Jeff's residence if necessary. In short, CIBC's primary location in Chicago is no impediment to the filing of a petition for appointment of guardianship in compliance with section 11a-7 of the Probate Act. Kindred raised this issue below before the circuit court's final judgment prior to this appeal. We find the court abused its discretion when it gave deference to CIBC's location as a party plaintiff in its *forum non conveniens* determination considering that CIBC's participation in this litigation is based on a petition for appointment of guardian filed in apparent violation of the Probate Act.

¶ 50    Next, even if Benjamin had complied with the Probate Act and filed a proper petition for appointment of guardian, we find the circuit court abused its discretion when it granted plaintiffs' motion to reconsider. That motion presented no new evidence and certainly no

---

[2]    The record does not entirely make clear whether Jeff was a patient at Warren Barr in Chicago at the time Benjamin filed the petition. In its emergency motion to reconsider, Kindred provided a list of facilities at which Jeff resided following the alleged negligence. The list shows that Jeff was discharged from Warren Barr on August 10, 2018 and that he resided at either at Marion Joy Rehablitation in DuPage County or at his residence in Kane County when Benjamin filed the petition. Nevertheless, Benjamin listed Jeff's residence in Kane County, not Cook County, as did the statement of right to petition for termination of adjudication of disability, which was issued by the circuit court.

evidence that was unavailable at the time Kindred filed its motion to transfer. CIBC's residency as a party plaintiff was not new evidence. As of October 12, 2018, Benjamin added CIBC as a plaintiff, but never raised the significance of CIBC's residency until the end of oral argument on their motion to reconsider. Indeed, neither the parties nor the circuit court made any mention of CIBC during briefing and oral argument on Kindred's motion to transfer, during briefing of plaintiffs' motion to reconsider, and nearly the entirety of oral argument on plaintiffs' motion to reconsider. Plaintiffs provided no reasonable explanation regarding why they never raised the issue of CIBC's residency at the time the court considered Kindred's motion to transfer. Therefore, the court was under no obligation to consider that issue when it reviewed plaintiffs' motion to reconsider. *Jones*, 2016 IL App (1st) 152923, ¶ 29; *Emrikson*, 2012 IL App (1st) 111687, ¶ 30. Further, as plaintiffs failed to raise this issue in their motion to reconsider, they forfeited the argument. *Jones*, 2016 IL App (1st) 152923, ¶ 29; *North River Insurance*, 369 Ill. App. 3d at 572-73.

¶ 51    Forfeiture aside, under *Moore*, 99 Ill. 2d at 79, as in this case, CIBC is suing as a plaintiff in a representative capacity. In *Moore*, the plaintiff brought a wrongful death action in Cook County after his daughter had been killed in a car-train collision in Wisconsin. The plaintiff was appointed as the administrator of the decedent's estate by a Wisconsin court. The parties did not dispute that Wisconsin was the place of the decedent's residence at the time of her death, the residence of her surviving children, the residence of the medical personnel who treated her, as well as the residence of all the potential witnesses known by the parties. In addition, the parties agreed that Wisconsin law governed the litigation. *Id*. at 78-79. The defendant's principal place of business was located in Cook County, but the court noted that the fact that a railroad does business in Illinois has been held not to be controlling in disposing of a motion to dismiss on the

basis of *forum non conveniens*. *Id*. at 79. The court concluded, "[i]n light of the representative capacity in which plaintiff here acts, his residency has no relationship to the litigation except as a nominal party. Thus under the facts of this case, plaintiff's choice of Cook County, Illinois, is of minimal significance." *Id*.

¶ 52    Like *Moore*, the facts in this case support the conclusion that CIBC has no relationship to the litigation except as a nominal party. In its order granting Kindred's motion to transfer, the circuit court found that DeKalb County unequivocally had the most predominant connection to the litigation.  As previously discussed, the court gave absolutely no consideration to CIBC's participation as a party to the litigation when it ruled on the motion to transfer. Plaintiffs never raised the significance of CIBC's residency in Cook County. Instead, the court considered that Benjamin, a resident of Kane County, chose Cook County as the forum, and properly gave that choice "somewhat less deference" considering the site of the accident occurred in DeKalb County. *Guerine*, 198 Ill. 2d at 518 ("when the site of the accident or injury is chosen, the choice is convenient because the litigation has the aspect of being 'decided at home'). The court gave deference to the fact that the vast majority of witnesses in Jeff's treatment expected to be called at trial live in DeKalb County or the surrounding counties. The court considered that a number of witnesses were scattered among several counties, but stated that plaintiffs ignored the fact that the medical personnel involved in Jeff's treatment worked or lived collectively 352 miles away from the DeKalb County courthouse compared to 2,177 miles away from the Cook County courthouse. The court found that the relative ease of access to sources of testimonial, documentary, and real evidence shifted the balance in favor of transfer to DeKalb County.

¶ 53    Here, CIBC's participation in this litigation arose at the request of plaintiffs' counsel due to its prior relationship with counsel's law firm. CIBC's sole purpose in this matter is to

22

represent the financial estate of Jeff. We find CIBC is a nominal party in this case because it is not the true party in interest. Indeed, CIBC has even less of a direct interest in this litigation than the plaintiff in *Moore*, who was the father of the decedent. CIBC merely serves in a representative capacity for the purposes of managing Jeff's financial estate should plaintiffs prevail at trial or following a settlement. This conclusion is bolstered by Sullivan's testimony in which he stated that Benjamin has no legal obligation to retain CIBC for Jeff's estate planning. Further, he stated that he would not have planned to attend trial but for plaintiffs' counsel's request to do so.

¶ 54    In *Guerine*, the plaintiff First American Bank served as the executor of the decedent's estate. *Guerine*, 198 Ill. 2d at 513. The supreme court never considered First American Bank's residency as a factor in its *forum non conveniens* analysis. *Id*. at 518-525 ("The plaintiffs filed suit in Cook County, and the record contains affidavits from Patrick, Christopher, and Samuel Malone stating that they will suffer no inconvenience by traveling to Cook County to litigate this case."). The location of the bank was never mentioned in the opinion. Simply put, the *Guerine* court treated the appointed bank as a nominal party. If courts were obligated to consider court appointed financial representatives as more than nominal parties for purposes of the *forum non conveniens* analysis, then it would open the door to allow plaintiffs to seek court appointed financial representatives in counties that they find favorable, which inevitably would lead to forum shopping.

¶ 55    Our supreme court has stated its concern in curtailing forum shopping:

" 'An integral part of the *forum non conveniens* analysis is fairness to the litigants and convenience to those that will be called to testify at trial. Realigning parties for the purpose of fixing venue in a county where there may be a more favorable

23

outcome to plaintiffs does not reinforce or complement the principles of *forum non conveniens*. Instead, it perverts them.' " *Dawdy*, 207 Ill. 2d at 184 (quoting *Certain Underwriters at Lloyd's, London v. Illinois Central R.R. Co.*, 329 Ill. App. 3d 189, 199 (2002)).

¶ 56    Considering the facts of this case and specifically noting how CIBC was selected by counsel for Benjamin to be joined as a plaintiff, we find the circuit court abused its discretion by giving deference to the residence of CIBC in its *forum non conveniens* analysis. Plaintiffs' forfeiture aside, we also find that CIBC is merely a nominal party and therefore not relevant to a *forum non conveniens* analysis. *Moore*, 99 Ill. 2d at 79.

¶ 57    We now address the second reason the circuit court decided to reverse itself when it granted plaintiffs' motion to reconsider. The court followed *Johnson* and placed more deference on the location of medical personnel treating Jeff Nelson after the alleged negligence occurred. However, *Johnson* is distinguishable here because it did not involve medical negligence.

¶ 58    *Johnson* involved a limousine crash on a highway in Kane County. 2019 IL App (1st) 180840, ¶ 5. Six passengers were riding in the limousine from Wisconsin to O'Hare Airport when it crashed into a construction site, killing one of the passengers and injuring five of the others. Out of the many defendants sued in the action, two of the defendant companies working on the construction site moved to transfer the action from Cook County to Kane County. The two defendants had their principal place of business in Cook County. The defendants also failed to submit affidavits showing that the requested transfer was strongly favored. *Id.* ¶ 50. The circuit court in *Johnson* concluded that the ease of access to proof slightly favored Cook County because "at least one eyewitness lived in Cook County, as did at least 20 medical providers who treated plaintiffs, as well as other damage witnesses." *Id.* ¶ 17. The court specifically noted that

24

"the brief, initial medical treatment that plaintiffs received in Kane County 'pales in comparison' to the treatment they late received in Cook County, which was better equipped to handle their care." *Id*. The appellate court affirmed these findings and the circuit court's ultimate conclusion that Cook County was the proper forum. *Id*. ¶ 70.

¶ 59 The facts of this case, however, are more similar to *Bruce*, which involved a medical negligence claim against a hospital and the decedent's treating physician. The plaintiff initially filed a wrongful death and survival claim in McHenry County, but after two years, voluntarily dismissed it and refiled in Cook County. The defendants moved to transfer the case back to McHenry County. When the circuit court considered ease of access to the source of evidence in its *forum non conveniens* analysis, it "placed considerable reliance on the fact that plaintiff's damage witnesses were located across several counties, while ignoring that the vast majority of the key medical witnesses, whose treatment of decedent was at issue in this case, reside in McHenry County." *Bruce*, 405 Ill. App. 3d at 325.

¶ 60 In reversing the circuit court's decision, the *Bruce* court concluded that the plaintiff relied "on nothing other than the technical residence of Sherman Hospital in Cook County based on the location of two facilities totally unrelated to this case and the residence of several other damage witnesses in Cook County. Defendant's presence in Cook County for venue purposes does not establish a connection with this action for *forum non conveniens* purposes." *Id*. at 331. The appellate court specifically did not give undue weight to the residence of several damage witnesses in Cook County, "when other damage witnesses are in other counties and most of the key witnesses regarding the treatment of decedent at issue in her wrongful death claim are in McHenry County." *Id*.

¶ 61     The decision in *Bruce* is consistent with our supreme court, which held that "[o]ne should be cautious, however, not to give undue weight to the fact that a plaintiff's treating physician or expert has an office in the plaintiff's chosen forum. To do so would allow a plaintiff to easily frustrate the *forum non conveniens* principle by selecting a witness treating a physician or expert in what would, in reality, be an inconvenient forum." *Bland v. Norfolk and Western Ry. Co.*, 116 Ill. 2d 217, 227 (1987); see also *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 510 (2003) ("The location of a plaintiff's treating physicians and experts should not be given undue weight.").

¶ 62     In this case, the circuit court's deference to medical providers who treated Jeff after the alleged negligence was unreasonable under the facts of this case. *Bland*, 116 Ill. 2d at 227; *Bruce*, 405 Ill. App. 3d at 331. The sole occurrence witness resides in DeKalb County, along with other medical personnel who were working at Kindred-Sycamore at the time of the alleged negligence. These witnesses will provide crucial evidence regarding the primary issue of negligence, which must be found before damages may even be determined. Kindred provided eight affidavits of its personnel, each attesting that DeKalb County is more convenient. As the circuit court stated, "the vast majority of witnesses and sources of evidence are located in DeKalb County." Furthermore, as the alleged negligence occurred in DeKalb County, the residents of that county have a much greater interest in the outcome of the litigation. The circuit court, in initially deciding to transfer this case, found that jurisdiction is *unequivocally* in DeKalb County due to its predominant connection to the litigation. We agree and find the circuit court abused its discretion when it granted plaintiffs' motion to reconsider and gave greater deference to the location of Jeff's medical providers who treated him after the alleged negligence occurred.

¶ 63    *Forum non conveniens* is an equitable doctrine founded on considerations of fundamental fairness and the sensible and effective administration of justice. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006). We find that when the circuit court granted Kindred's motion to transfer, it properly balanced the prevailing private and public interests to determine the appropriate forum in which the case should be tried. *Dawdy*, 207 Ill. 2d at 172. We agree with the circuit court that Kindred met its burden to show that the relevant private and public interest factors unequivocally favor Kindred's choice of forum. *Guerine*, 198 Ill. 2d at 517-18.

¶ 64                                        CONCLUSION

¶ 65    We reverse the April 11, 2019 order granting plaintiffs' motion to reconsider and the May 10, 2019 order denying Kindred's emergency motion to reconsider. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5 (eff. Feb. 1, 1994), we reinstate the March 11, 2019 circuit court order, which granted Kindred's motion to transfer this case from Cook County to DeKalb County, and remand for further proceedings consistent with this order.

¶ 66    Reversed and remanded.